UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LUIS MANUEL TAPIA LOPEZ,

               Petitioner,

     v.

MERRICK GARLAND, *in his official capacity as Attorney General, U.S. Department of Justice*,[1] *et al.*,

              Respondents.

_____

22-CV-39-LJV
DECISION & ORDER

Luis Manuel Tapia Lopez has been detained in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), since June 24, 2021—about 13 months.  Docket Item 1 at ¶ 2.  On January 11, 2022, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.  Docket Item 1.  The respondents answered the petition on March 28, 2022, and on April 21, 2022, Tapia Lopez replied.  Docket Items 6, 8.

For the reasons that follow, this Court grants Tapia Lopez's petition in part.

---

[1] In its memorandum of law, the respondents argue that the only proper respondent in this matter is Jeffrey Searls, "the person with direct control over the detention of [Tapia Lopez]."  Docket Item 6-3 at 23.  "Because resolution of who is the proper respondent will not affect the disposition of this petition, the Court will not address it further."  *Khemlal v. Shanahan*, 2014 WL 5020596, at *2 n.3 (S.D.N.Y. Oct. 8, 2014).  It is clear, at the very least, that Searls "has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, [so] that he may be liberated if no sufficient reason is shown to the contrary."  *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).

## FACTUAL BACKGROUND

The following facts, taken from the record, come largely from filings with DHS.

Tapia Lopez is a native and citizen of the Dominican Republic.  Docket Item 6-1 at ¶ 5; Docket Item 6-2 at 13.  He was admitted to the United States as a lawful permanent resident in March 1982.  Docket Item 6-1 at ¶ 5; Docket Item 6-2 at 13.

Beginning in October 2004, Tapia Lopez was arrested, convicted, and sentenced for several offenses under New York State law, including second-degree attempted burglary, fourth-degree criminal possession of stolen property, and various drug crimes. *See* Docket Item 6-1 at ¶¶ 6-15, 19; Docket Item 6-2 at 1-11, 27.  In November and December 2010, he was charged with robbery, attempted robbery, burglary, and criminal impersonation in two cases brought in New York State Supreme Court, New York County.  Docket Item 6-1 at ¶¶ 16, 18; Docket Item 6-2 at 14-17, 22-26.  He ultimately was convicted of first-degree robbery in both cases, and on December 20, 2012, he was sentenced to consecutive terms of twelve years' imprisonment and five years of post-release supervision in each case.  Docket Item 6-1 at ¶ 24; Docket Item 6-2 at 40-41.

In the meantime, on February 2, 2012, DHS issued a "Notice to Appear," charging that Tapia Lopez was subject to removal from the United States under various provisions of the Immigration and Nationality Act, 8 U.S.C. §§ 1101-1537.  Docket Item 6-1 at ¶ 23; Docket Item 6-2 at 34-39.  More specifically, DHS charged that Tapia Lopez was subject to removal as a noncitizen who had been convicted of a controlled substance offense, *see* 8 U.S.C. § 1227(a)(2)(B)(i), and as a noncitizen who had been convicted of an aggravated felony offense, *see id.* § 1227(a)(2)(A)(iii).  Docket Item 6-1

2

at ¶ 23; Docket Item 6-2 at 34-39.  DHS then filed additional charges of removability on December 15, 2016, charging that Tapia Lopez was subject to removal as a noncitizen convicted of two crimes involving moral turpitude that did not arise out of a single scheme of criminal conduct, *see* 8 U.S.C. § 1227(a)(2)(A)(ii), and again as a noncitizen who had been convicted of an aggravated felony offense, *see id.* § 1227(a)(2)(A)(iii). Docket Item 6-1 at ¶ 38; Docket Item 6-2 at 50-51.

Tapia Lopez was released from state custody on June 24, 2021, and he was taken into DHS custody that same day.  Docket Item 6-1 at ¶ 52; Docket Item 6-2 at 92-99.  Two days later, DHS conducted a custody review under the then-existing nationwide injunction in *Fraihat v. United States Immigration & Customs Enforcement*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), *rev'd*, 16 F.4th 613 (9th Cir. 2021), and determined that Tapia Lopez posed a threat to public safety and would remain detained. Docket Item 6-1 at ¶ 53; Docket Item 6-2 at 101.

Tapia Lopez's removal proceedings eventually worked their way from an Immigration Judge ("IJ") to the Board of Immigration Appeals ("BIA") to the United States Court of Appeals for the Second Circuit and back down again.  *See* Docket Item 6-1 at ¶¶ 39-51, 54-56, 59-61; Docket Item 6-2 at 62-79, 83-91, 111-13.  On April 6, 2022, the IJ ordered Tapia Lopez removed to the Dominican Republic and denied his application for relief under the Convention Against Torture.  Docket Item 7-1.  Tapia Lopez appealed that decision to the BIA about a week later, Docket Item 8-1, and his appeal to the BIA remains pending, *see* Docket Item 8 at 16.

**DISCUSSION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The respondents maintain that Tapia Lopez is validly detained under 8 U.S.C. § 1226(c).[2]  Docket Item 6-3 at 11.  Tapia Lopez disagrees and argues that his "continued detention without a constitutionally adequate bond proceeding . . . violates his right to procedural due process."  Docket Item 1 at ¶¶ 59-60; Docket Item 8.

The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of [] liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'"  *Id*. (citations omitted).  "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner."  *Id*.  "This requirement has traditionally been referred to as 'procedural' due process."  *Id*.

---

[2] "Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable."  *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018).  Section 1226(c), the statute under which Tapia Lopez is detained, "provides for mandatory detention of a small class of noncitizens," including those who have committed certain offenses.  *See Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020).  Section 1226(c) prohibits the government from offering covered noncitizens the opportunity to challenge their detention at a hearing.  *See Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint."  *Id.* (emphasis in original) (citations and internal quotation marks omitted).  Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government."  *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[]."  *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").  At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens."  *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

I.      PROCEDURAL DUE PROCESS

Tapia Lopez says that his continued mandatory detention under 8 U.S.C. §

1226(c) "without an adequate process for review violates his right to procedural due

process."  Docket Item 1 at ¶ 60.  The Due Process Clause is not offended by the

mandatory detention of noncitizens for the "*brief period necessary* for their removal

proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by

detention beyond that "brief" period, depending on the balance of the individual's and

the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, J., concurring) ("[A] lawful

permanent resident . . . could be entitled to an individualized determination as to his risk

of flight and dangerousness if the continued detention bec[omes] unreasonable or

unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional

sufficiency of procedures provided in any situation, of course, varies with the

circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to

immigration detention with a two-step inquiry."  *Hemans v. Searls*, 2019 WL 955353, at

*5 (W.D.N.Y. Feb. 27, 2019).  "A[t] the first step, the Court considers whether the

[noncitizen's] detention has been unreasonably prolonged."  *Id*.  "If it has not, then there

is no procedural due process violation."  *Id*.  "But if it has, the Court proceeds to step

two and 'identifies the specific dictates of due process' by considering the *Mathews v.

Eldridge* factors."  *Id*. (alterations omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319,

335 (1976)).  "If the government has not provided the procedural safeguards dictated by

the *Mathews* factors to a[ noncitizen] subject to unreasonably prolonged detention, then

his continued detention violates procedural due process."  *Id*.

A.      **Tapia Lopez's Detention**

"[W]hen weighing the lawfulness of the continued detention of a[ noncitizen]

under the Due Process Clause," several factors determine whether detention is

unreasonably prolonged.  *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858 (D. Minn.

2019).  This Court, for example, has considered "(1) the total length of detention to date;

(2) the conditions of detention; (3) delays in the removal proceedings caused by the

parties; and (4) the likelihood that the removal proceedings will result in a final order of

removal."[3]  *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention.  Tapia Lopez

has been in DHS custody since June 24, 2021—about thirteen months.  *See* Docket

Item 1 at ¶ 2.  "As detention continues past a year, courts become extremely wary of

permitting continued custody absent a bond hearing."  *See Muse*, 409 F. Supp. 3d at

716 (and cases cited therein).  In fact, courts have found detention even shorter than a

year to be unreasonably prolonged as part of a procedural due process analysis.[4]

---

[3] The respondents argue that this Court also should consider whether Tapia
Lopez's detention exceeds the sentence that he faced for his convictions, the nature of
his prior convictions, and the likely duration of Tapia Lopez's future detention.  *See*
Docket Item 6-3 at 19, 21-22.  But as this Court previously has explained, "it makes little
sense to compare 'different types of custody imposed for different reasons by different
sovereigns' to determine whether federal immigration detention has become
unreasonably prolonged."  *Hemans*, 2019 WL 955353, at *6 n.4 (quoting *Muse v.
Sessions*, 409 F. Supp. 3d 707, 715 n.3 (D. Minn. 2018)).  And while the likely duration
of future detention may bear on whether this Court grants relief under its equitable
habeas powers, it offers little guidance on whether a petitioner's detention *already* has
become unreasonably prolonged.  *See id.*

[4] *See, e.g.*, *Roasrio v. Decker*, 2021 WL 3115749, at *3 (S.D.N.Y. July 20, 2021)
(more than eleven months); *Sophia v. Decker*, 2020 WL 764279, at *4 (S.D.N.Y. Feb
14, 2020) (approximately seven months); *Vargas v. Beth*, 378 F. Supp. 3d 716, 727
(E.D. Wis. 2019) (approximately nine-and-a-half months); *Cabral v. Decker*, 331 F.
Supp. 3d 255, 261 (S.D.N.Y. 2018) (more than seven months and more than nine
months by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108,

In *Demore*, the Supreme Court upheld the constitutionality of section 1226(c), relying on the "very limited time of [] detention at stake" and noting that "in the majority of cases[, section 1226(c) detention] lasts for less than the 90 days [] considered presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Tapia Lopez's thirteen-month detention far exceeds the four-month average cited in *Demore*. The length of Tapia Lopez's detention therefore supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Tapia Lopez's detention. *See Sajous*, 2018 WL 2357266, at *11 (citations omitted). "The more that the conditions under

---

at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (more than eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (more than ten months); *see also Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case."). *But cf. Minaya-Rodriguez v. Barr*, 459 F. Supp. 3d 488, 497 (W.D.N.Y. 2020) (noting that the "procedural due process claims by petitioners detained for 6 to approximately 12 months while awaiting final orders in their immigration proceedings generally do not succeed—unless the government caused extreme delay or engaged in dilatory conduct").

which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 409 F. Supp. 3d at 717.

The respondents argue that Tapia Lopez's "conditions of detention are much better than those that would be faced by a criminal detainee in a prison."[5]  Docket Item 6-3 at 19.  More specifically, the respondents say that "[u]nlike [] a prison environment, detainees [at the BFDF] reside primarily in a dormitory-style setting and may move throughout the facility without being required to wear handcuffs or legcuffs."  *Id.* at 21.  And the respondents point to various amenities available at the BFDF, including a "law library, indoor basketball court, entertainment library, and outdoor recreation areas."  *Id.* at 19-20.

In contrast, Tapia Lopez asserts that while the BFDF is "perhaps not akin to a maximum-security prison," it is "not 'meaningfully different from at least a low-security penal institution for criminal detention.'"  Docket Item 8 at 14 (quoting *Gonzales Garcia v. Barr*, 2020 WL 525377, at *15 (W.D.N.Y. Feb. 3, 2020)).  And Tapia Lopez has submitted a "Buffalo Federal Detention Facility Handbook," which outlines, among other things, the possibility of administrative or disciplinary segregation for BFDF detainees. *See* Docket Item 8-2 at 6.  Indeed, Tapia Lopez was placed in disciplinary segregation and lost various privileges in November 2021 after "altered burnt tissue paper was

---

[5] The respondents' memorandum of law cites a declaration from the assistant officer-in-charge at the BFDF to argue that conditions at the BFDF are meaningfully different from penal confinement.  *See* Docket Item 6-3 at 19-21.  Although that declaration apparently was intended to be attached to the response, the respondents have not filed a copy for this Court to review.  Nevertheless, the Court has considered the respondents' representations about the conditions at the BFDF that are included in their memorandum.

found in [his] cell vent." *See* Docket Item 6-1 at ¶ 57 (internal quotation marks omitted);

Docket Item 6-2 at 114-16.

Because of the restrictions imposed on detainees at the BFDF and the possibility

of disciplinary segregation, conditions at the BFDF certainly "resemble penal

confinement" for at least some of the persons detained there.  *See Muse*, 409 F. Supp.

3d at 717.  And this Court has previously found that conditions at BFDF are akin to

prison conditions, especially for detainees, such as Tapia Lopez, who have criminal

records.  *See Barrie v. Barr*, 2020 WL 1877706, at *5 (W.D.N.Y. Apr. 15, 2020).   This

factor therefore weighs in Tapia Lopez's favor as well.

Third, courts consider whether the detainee has prolonged his own detention.

The Second Circuit has found that this factor weighs against finding detention

unreasonable when a noncitizen has "substantially prolonged his stay by abusing the

processes provided to him" but not when "an immigrant [has] simply made use of the

statutorily permitted appeals process."  *Hechavarria*, 891 F.3d at 56 n.6 (first quoting

*Nken v. Holder*, 556 U.S. 418, 436 (2009)).  As the Sixth Circuit has noted, "appeals

and petitions for relief are to be expected as a natural part of the process.  A[

noncitizen] who would not normally be subject to indefinite detention cannot be so

detained merely because he seeks to explore avenues of relief that the law makes

available to him."  *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in

*Hechavarria*, 891 F.3d at 56 n.6).  Indeed,

> Although a[ noncitizen] may be responsible for seeking relief, he is not
> responsible for the amount of time that such determinations may take.  The
> mere fact that a[ noncitizen] has sought relief from deportation does not
> authorize the [government] to drag its heels indefinitely in making a
> decision.  The entire process, not merely the original deportation hearing, is
> subject to the constitutional requirement of reasonability.

*Id*.

The respondents assert that "[t]he government has caused no significant delay in [Tapia Lopez's removal] proceedings, and [Tapia Lopez] himself has caused some delay." Docket Item 6-3 at 16.  More specifically, the respondents fault Tapia Lopez for "mak[ing] choices during the proceedings"—apparently, by choosing to litigate his removal—"that necessarily add[ed] time to the resolution of his case." *Id.* at 15-16.

But the respondents do not suggest that Tapia Lopez has done anything other than pursue his claims before the IJ, the BIA, and the Second Circuit.  *See id.*  And for the reasons just stated, Tapia Lopez's "use of the statutorily permitted appeals process" does not mean that he has prolonged his own detention.  *See Hechavarria*, 891 F.3d at 56 n.6.  This factor therefore does not weigh against him.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal.  But this Court declines to weigh the merits of Tapia Lopez's claims, which are currently pending before the BIA.

After balancing all these factors, this Court finds that Tapia Lopez's detention has been unreasonably prolonged.  Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably prolonged detention demands.

###   B.    The Process Due to Tapia Lopez

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335,

namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).  Here, that analysis leads to the conclusion that Tapia Lopez's continued detention without an individualized hearing at which the government must justify his continued detention by clear and convincing evidence fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause."  *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Tapia Lopez's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity."  *Addington v. Texas*, 441 U.S. 418, 427 (1979).  He has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint."  *Zadvydas*, 533 U.S. at 690.  Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Tapia Lopez has not conceded his deportability, and the resolution of that issue remains pending before the BIA.  In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably prolonged detention while contesting his deportability.  *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest.  Tapia Lopez left the Dominican Republic as a child; since then he has lived almost his entire life in the United States.  *See* Docket Item 1 at ¶ 1.  Moreover, Tapia Lopez's mother, children, and extended family reside in the United States, not in the Dominican Republic where the government wishes to send him.  *See* Docket Item 6-2 at 66-69.  Thus, if Tapia

Lopez chose not to challenge his removal, he would "lose the right to rejoin [his] immediate family, a right that ranks high among the interests of the individual." *Landon*, 459 U.S. at 34.

This Court recognizes that the government's interest in detaining Tapia Lopez also may be strong.  The respondents contend that Tapia Lopez's multiple convictions "show that he poses a high risk of danger to the community and suggest a risk of flight." Docket Item 6-3 at 21.  In fact, Tapia Lopez is detained under 8 U.S.C. § 1226(c), which applies to noncitizens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 138 S. Ct. at 837.  "[Noncitizens] detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[6]  *Id*. at 846.  Thus, in mandating the detention of criminal noncitizens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community.  *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal [noncitizens] who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal [noncitizens] failed to appear for their removal hearings").[7]

So "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling."  *Salerno*, 481 U.S. at 749.  And general concerns about the risk of

---

[6] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, not applicable here.

[7] The Court noted that this number included noncitizens who were released from custody *without* an individualized bond hearing.  *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had authority to release these [noncitizens] on bond, it is not clear that *all* of the [noncitizens] released were in fact given individualized bond hearings." (emphasis in original)).

flight highlight the government's compelling interest in preserving its "ability to later carry

out its broader responsibilities over immigration matters." *Doherty v. Thornburgh*, 943

F.2d 204, 211 (2d Cir. 1991).

### C.    Whether The Procedures Used Thus Far Justify Tapia Lopez's Continued Detention

When Tapia Lopez was taken into immigration custody in June 2021, DHS

conducted an initial custody review under the Central District of California's order in

*Fraihat v. United States Immigration & Customs Enforcement*, 445 F. Supp. 3d 709

(C.D. Cal. 2020), and concluded that Tapia Lopez posed a threat to public safety.  *See*

Docket Item 6-1 at ¶ 53; Docket Item 6-2 at 101.  But that determination occurred

without an individualized bond hearing before a neutral decisionmaker.  And now that

Tapia Lopez's detention has become unreasonably prolonged, due process requires

that he be given *some* opportunity to be heard "at a meaningful time and in a

meaningful manner."  *Armstrong*, 380 U.S. at 552.

An opportunity to be heard in a meaningful manner necessarily requires a

hearing that "satisfies the constitutional minimum of fundamental fairness."  *Santosky v.*

*Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation and internal quotation marks omitted).

When the government seeks the civil detention of a person to effect a compelling

regulatory purpose, it must show by clear and convincing evidence that such detention

is necessary to serve that compelling interest.  *See Foucha v. Louisiana*, 504 U.S. 71,

81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756

(explaining that the "clear and convincing evidence" standard applies "when the

individual interests at stake in a [] proceeding are both 'particularly important' and 'more

14

substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)).  That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or that the noncitizen will appear for any future proceeding.[8]  This requires consideration of less-restrictive alternatives to detention.  *See id.*; *cf. United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the [g]overnment's obligation to prove that the alternative will be ineffective to achieve its goals.").

## II.   CONCLUSION

Tapia Lopez's section 1226(c) detention has been unreasonably prolonged. Because section 1226(c) does not require—indeed, does not permit—an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining Tapia Lopez, it is unconstitutional as applied to him.  As such, his continued detention violates the Due Process Clause.

---

[8] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably prolonged immigration detention.

Tapia Lopez must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Tapia Lopez's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decisionmaker also must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount Tapia Lopez can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Tapia Lopez from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Tapia Lopez's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests.  In other words, the decisionmaker must find, by clear and convincing evidence, that no condition or combination of conditions of release can reasonably ensure Tapia Lopez's appearance

16

and the safety of the community—that is, even with conditions, Tapia Lopez presents an identified and articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a copy of the bond hearing order.


SO ORDERED.

Dated:      July 29, 2022
            Buffalo, New York


 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE